So Ordered.

Dated: September 30, 2025



Rachel M. Blise
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Jeffrey J. Kahle and Kristin C. Kahle,

    Debtors.

Case No. 24-20054-rmb

Chapter 7

### DECISION AND ORDER SUSTAINING
### TRUSTEE'S OBJECTION TO PROOF OF CLAIM NO. 18

Debtors Jeffrey and Kristin Kahle each signed a Commercial Guaranty whereby they guaranteed repayment of a loan made by Johnson Bank to Kahle Wholesale Flooring, Inc. Johnson Bank filed two proofs of claim, one for each of the guaranties. For the reasons set forth below, the Court concludes that Johnson Bank is entitled to only one claim against the bankruptcy estate for the guaranty debt.

### BACKGROUND

Married debtors Jeffrey and Kristin Kahle filed a joint chapter 7 bankruptcy petition on January 5, 2024. After the § 341 meeting of creditors, the chapter 7 trustee, Titania Whitten (the "Trustee"), filed a notice of assets, and unsecured creditors were directed to file proofs of claim. Creditor Johnson Bank filed two proofs of claim, which the Clerk assigned as Claim No. 17 and Claim No. 18.

Claim No. 17 is in the total amount of $287,926.00 and represents amounts due under two Commercial Guaranty agreements signed by Jeffrey Kahle. In a Commercial Guaranty signed on April 16, 2021, Kahle guaranteed payment of certain debts that his company, Quartz World USA LLC ("Quartz World"), owed to Johnson Bank. By the time of the petition date, the amount due Johnson Bank from Quartz World was $49,847.86. In a separate Commercial Guaranty signed on April 27, 2018, Kahle guaranteed repayment of certain debts that Kahle Wholesale Flooring, Inc. ("KWF") owes to Johnson Bank. On February 19, 2024, a state court entered judgment against KWF on the underlying debt in the amount of $238,078.14, and Johnson Bank claims Jeffrey Kahle is responsible for that amount under the guaranty.

Claim No. 18 is in the total amount of $238,078.14. The claim is based on a separate Commercial Guaranty signed by Kristin Kahle on April 27, 2018 guaranteeing repayment of the same debt that KWF owes to Johnson Bank. Both of the Commercial Guaranty agreements for the KWF debt include a signed "Marital Purpose Statement" in which the Kahles each agreed that their obligation under the Commercial Guaranty "is being incurred in the interest of Guarantor's marriage or family."

The Trustee objected to Claim No. 18. She argues that the debt owed by Kristin Kahle under the Commercial Guaranty that she signed is essentially the same as the debt owed by Jeffrey Kahle under his separate Commercial Guaranty because they both represent the same underlying unpaid loan to KWF. The Trustee asserts that Johnson Bank is entitled to just one distribution from the estate on that debt. Johnson Bank responded to the objection, arguing that the debts are different because each of the Kahles signed a separate guaranty. The Court received briefing from the parties, including from the United States Trustee, and heard oral argument.

## DISCUSSION

Section 501 of the Bankruptcy Code provides that "[a] creditor or an indenture trustee may file a proof of claim." 11 U.S.C. § 501(a). Any claim filed under § 501 is "deemed allowed" unless a party in interest objects. 11 U.S.C. § 502(a). If an objection is made to a proof of claim, the Court must determine the amount of the claim and must allow the claim in that amount, unless it falls under one of several stated exceptions. 11 U.S.C. § 502(b). While the statute does not list duplicative claims as a basis for disallowance, it is generally understood that "[a] claim that seeks duplicate recovery for the same debt is partially unenforceable to the extent of the duplication." *In re Pierport Dev. & Realty, Inc.*, 491 B.R. 544, 547 (Bankr. N.D. Ill. 2013); *see also In re Handy Andy Home Imp. Ctrs., Inc.*, 222 B.R. 571, 575 (Bankr. N.D. Ill. 1998) ("[I]t is axiomatic that one can not recover for the same debt twice.").

Here, the Trustee contends that Johnson Bank's claims are duplicative to the extent Johnson Bank seeks to recover under the separate guaranties the Kahles signed for the same KWF debt. Johnson Bank argues that the claims are not duplicative because each debtor has separate liability under their separate Commercial Guaranty agreements. Johnson Bank agrees that it cannot recover the same debt twice, but the bank wants to receive a pro rata distribution on both of its claims until the guaranty debt for the KWF loan is paid in full. The Court concludes the bank cannot assert two claims because the bankruptcy estates of the debtors were substantively consolidated, and Johnson Bank can be paid just once from the consolidated estate.

Section 302 of the Bankruptcy Code provides that married debtors may commence a joint case by filing a single petition for both spouses. 11 U.S.C. § 302(a). "After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." 11 U.S.C. § 302(b). This district has a local rule addressing consolidation of joint bankruptcy cases: "The estates in cases commenced by the filing of a joint petition by or

3

against spouses will be administered jointly and substantively consolidated, unless the court directs otherwise." Bankr. E.D. Wis. Local R. 1015. The Court has not directed otherwise in the Kahles' case, so their estates were substantively consolidated upon filing.

"Substantive consolidation has the effect of consolidating assets and liabilities of multiple debtors and treating them as if the liabilities were owed by, and the assets held by, a single legal entity." *In re Republic Airways Holdings Inc.*, 565 B.R. 710, 716 (Bankr. S.D.N.Y. 2017) (quotation omitted). In the corporate context, courts determining whether to substantively consolidate the estates of two or more debtors look to a variety of factors, including the following two "critical factors": (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; and (2) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors. *See In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988) (collecting cases).

Using those factors, automatic substantive consolidation makes sense for spouses in Wisconsin. Under Wisconsin law, "[a]ll property of spouses is presumed to be marital property." Wis. Stat. § 766.31(2). In addition, "[a]n obligation incurred by a spouse during marriage, including one attributable to an act or omission during marriage, is presumed to be incurred in the interest of the marriage or the family." Wis. Stat. § 766.55(1). And such obligations incurred in the interest of marriage or family can be satisfied "from all marital property and all other property of the incurring spouse." Wis. Stat. § 766.55(2)(b). With all property presumed to be marital property and all debts presumed to be incurred in the interest of marriage or family such that all marital property is available for satisfaction of those debts, creditors in Wisconsin typically deal with spouses as a single economic unit, and the financial affairs of married debtors typically are so entangled that the estate and the creditors benefit from

consolidation. There may be circumstances involving significant individual, non-marital assets of one debtor or significant debts of one spouse that were not incurred in the interest of the marriage or family. In those cases, it might be appropriate to deviate from Local Rule 1015 and administer the debtors' estates separately.[1]

Here, there is nothing in the record to suggest that the Kahles' estates ought not be substantively consolidated and administered jointly. Indeed, it seems that even in business dealings the Kahles agreed to application of the ordinary presumptions regarding marital property and collection of debt from marital property, because the guaranties the Kahles gave to Johnson Bank included a "Marital Purpose Statement" that each signed.

Substantive consolidation of the Kahles' bankruptcy estates means that Johnson Bank has just one claim against that consolidated estate because the liabilities of the debtors are collapsed into a single set of claims. *See Republic Airways Holdings*, 565 B.R. at 716 (substantive consolidation treats liability of multiple debtors "as if the liabilities were owed by . . . a single legal entity"). For example, in *In re K-tel International, Inc.*, 65 B.R. 594 (Bankr. D. Minn. 1986), the bankruptcy court ordered substantive consolidation of K-tel International, Inc. and Candlelite Marketing, Inc. *Id.* at 595. Candlelite owed a debt to Travelers Indemnity Company for certain bonds. K-tel International also owed a debt to Travelers, with its obligation being akin to a guaranty of the amounts owed by Candlelite. *Id.* The court held that Travelers was entitled to only one claim against the substantively consolidated estate because allowing just one claim, rather than two, "more closely comports with the intent and spirit of the Court's

---

[1] Even where the estates of married debtors may be administered separately in a joint case, the Bankruptcy Code anticipates that certain estate property will be consolidated for payment of certain claims because joint cases of married debtors in Wisconsin are likely to involve "community property" and "community claims." *See* 11 U.S.C. §§ 101(7), 541(a)(2), 726(c)(2); *see also* 6 Collier on Bankruptcy ¶ 726.05 (16th ed. 2025) (explaining that the "sub-estates" under §§ 726(c)(2)(A) and 726(c)(2)(D) are "consolidated" for purposes of distribution).

consolidation Order, as well as general equitable principles in bankruptcy." *Id.*; *see also In re Gulfco Inv. Corp.*, 593 F.2d 921, 928 (10th Cir. 1979) ("Once the consolidation has been ordered the subject guarantees, which represent multiple claims, are necessarily eliminated.").

Here, too, allowing Johnson Bank just one claim of $238,078.14 for the guaranty of the KWF obligation comports with the intent and spirit of the substantive consolidation of the estates of married debtors in this district and with general equitable principles of bankruptcy. There is but one bankruptcy estate from which Johnson Bank can collect. *See* 4 Collier on Bankruptcy ¶ 501.01 (16th ed. 2025) (noting that an allowed claim is a claim "against the assets of the bankruptcy estate"). Both Commercial Guaranty agreements relate to the same underlying debt, and Johnson Bank is owed $238,078.14 on that debt. That is the amount that Johnson Bank can collect from the estate.

If the Court were to allow the full amount of both Claim No. 17 and Claim No. 18, then Johnson Bank would have allowed claims in the total amount of $476,156.28 (setting aside for the moment the additional amount that Johnson Bank is owed on the Quartz World guaranty). But Johnson Bank is not entitled to recover that much from the single, consolidated bankruptcy estate. Johnson Bank is entitled to collect just $238,078.14, so that is the amount that should be allowed.

Allowance of a single claim in this joint case aligns with the practical result Johnson Bank could expect if the Kahles filed separate bankruptcy cases or if the bank were to collect the debt outside of bankruptcy. Suppose the Kahles filed bankruptcy separately, rather than with a joint petition. This would have resulted in the creation of two separate bankruptcy estates, but the estates would be comprised of different assets. The first-filed estate would include all that spouse's individual property, as well as all the couple's marital property; the second-filed estate

would include only the property not part of the first-filed estate. *See, e.g.*, *In re Moreno*, 622 B.R. 903, 907-08 (Bankr. C.D. Cal. 2020) ("[W]hen a married couple files separate bankruptcy cases, all of their community property becomes property of the bankruptcy estate in the case filed first. Separate bankruptcy estates arise in both cases but the bankruptcy estate in the case filed second does not include any community property because all of it passed into the first bankruptcy estate."). As the Trustee concedes, and the Court agrees, Johnson Bank could assert its full guaranty claim in both cases based on the separate guaranty agreements signed by each of the Kahles. But the distributions made by the trustees in the separate would not be from the same property. Johnson Bank would essentially receive a single distribution from the entirety of the Kahles' property. Here, too, Johnson Bank should receive a single distribution from the entirety of the Kahles' property.

Similarly, if the Kahles hadn't filed bankruptcy, Johnson Bank could obtain separate judgments against each of the Kahles in state court. But the bank would look to the same set of property for collection of the judgments. Each item of non-exempt individual or marital property could be collected only once. A chapter 7 bankruptcy liquidates that same non-exempt property for distribution to creditors, except that Johnson Bank must share pro rata with other creditors also entitled to collect from the Kahles' property. Johnson Bank could not collect twice from, for example, a non-exempt vehicle owned by the Kahles outside of bankruptcy, so it should not receive two distributions from the bankruptcy trustee for the same non-exempt property in bankruptcy.

Johnson Bank cites several cases in support of its argument that it can assert two claims for the guaranty debt. None is persuasive, and at least one supports the Court's conclusion. Johnson Bank relies primarily on *In re Holler*, 463 B.R. 733 (Bankr. E.D. Pa. 2011), but that

7

Case 24-20054-rmb    Doc 110    Entered 09/30/25 19:02:02    Page 7 of 10

case involved a different question than this case. There, like this case, the married debtors each signed separate guaranties for loans made to their company. *Id.* at 736. The company and both debtors defaulted on the primary loans and the guaranties, and the bank obtained four judgments against the debtors, two judgments against each debtor for the two guaranties each had signed. *Id.* at 736-37. In their later bankruptcy case, the debtors sought to avoid the resulting judgment liens against property they held as tenants by the entirety. *Id.* at 738-39. Under Pennsylvania law, a judgment against an individual spouse is not an enforceable lien on property held as tenants by the entirety. *Id.* at 739-40. The court held that the judgment liens were avoidable because the bank obtained separate guaranties from and separate judgments against the individual debtors. *Id.* at 755. Here, there are no liens against property of the Kahles or of the bankruptcy estate to be avoided. Moreover, it appears that the creditor in *Holler* did not attempt to file claims for each of the four separate guaranties; rather, it filed two claims, one for each underlying debt that was separately guaranteed by the debtors. *See In re Holler*, Case No. 11-22090-ref, Claim Nos. 18 & 19 (Bankr. E.D. Pa.).

Johnson Bank also relies on *Ivanhoe Building & Loan Ass'n of Newark v. Orr*, 295 U.S. 243 (1935), a case decided under the Bankruptcy Act that preceded the Bankruptcy Code. There, the Supreme Court held that a creditor need not reduce the amount of its proof of claim in a bankruptcy case based on recovery from non-debtor third parties for the same debt. *Id.* at 246. In the context of this case, application of the rule in *Ivanhoe* means that Johnson Bank may assert the full $238,078.14 for the Kahles' guaranty of the KWF debt and, absent a court order to the contrary, receive distributions on that amount, even if it receives payment or collateral from KWF to reduce the balance, with the caveat that Johnson Bank must return to the Trustee any amounts it receives in excess of the underlying debt. *Ivanhoe* does not stand for the proposition

8

that Johnson Bank may assert two claims for what is essentially the same debt against the same, substantively consolidated bankruptcy estate.

Finally, Johnson Bank cites *In re F.W.D.C., Inc.*, 158 B.R. 523 (Bankr. S.D. Fla. 1993). That case involved three separate sets of corporate entities that filed bankruptcy, all with intertwining obligations and guaranties owed to Chase Bank, with a total indebtedness of approximately $63 million. *Id.* at 524. The bankruptcy court referred to three sets of debtors – the "F.W.D.C. Debtors," the "Cenvill Debtors," and the "Chase Debtors." *Id.* The court entered an order substantively consolidating the estates of the F.W.D.C. Debtors and the Cenvill Debtors. *Id.* "As a result of [that] order, Chase's claims against the F.W.D.C. Debtors and the Cenvill Debtors were merged into one claim against the estate of the [consolidated debtors]." *Id.* That is, as Johnson Bank does in this case, Chase had a single claim against the consolidated bankruptcy estate and could not assert multiple claims for the same underlying debt.

Chase later collected approximately $45 million from collateral owned by the Chase Debtors. That collection reduced its claims against the Chase Debtors to approximately $18 million, but the bank still had a claim against the previously consolidated debtors of $63 million. *Id.* The debtors wanted to further consolidate the Chase Debtors with the previously consolidated debtors. Chase argued that it would be prejudiced by the consolidation of its claims into a single set of claims in the amount of approximately $18 million. *Id.* at 527. The bankruptcy court agreed. The court substantively consolidated the estates of the remaining debtors, but it held that Chase need not reduce its claims to reflect the value of the collateral it had already received. *Id.* at 528.

Contrary to Johnson Bank's assertion, the decision in *F.W.D.C.* supports the Court's conclusion in this case. When the estates of the first two sets of debtors were substantively

9

consolidated in *F.W.D.C.*, Chase's claims were merged into a single claim against the estate of the consolidated debtors, which is exactly what should happen in this case. *Id.* at 524. After the estates of the third set of debtors were consolidated with the previously-consolidated estate, Chase did not retain its claims in the amount of $18 million against the Chase Debtors and a separate claim in the amount of $63 million against the previously consolidated debtors. *Id.* at 528. Chase retained just one set of claims against the consolidated estate, but without reduction for the previous collection. *Id.* Here, as in *F.W.D.C.*, substantive consolidation of the Kahles' estates means that Johnson Bank can collect from the estate just once for the same debt, but without the need to reduce that single claim by the amount, if any, it receives from KWF or any other non-debtor obligor or guarantor on the debt.

## CONCLUSION

For the reasons discussed above, Johnson Bank is entitled to recover $238,078.14 from the Kahles' bankruptcy estate based on the Kahles' guaranty of the KWF debt. That amount is included in Claim No. 17. The amount in Claim No. 18 therefore is duplicative and should not be allowed.

Accordingly, IT IS HEREBY ORDERED that the Trustee's objection to Claim No. 18 is SUSTAINED and the claim is DISALLOWED in its entirety.

# # # # #